IN THE UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

V.                                    CASE NO. 08-CV-1065

FJN CONTRACTORS, INC.,
FRANCISCO GARCIA JULIAN,
Individually and as partner of FJN
Contractors, Inc., LINDA MARLENE JULIAN (GORZ),
DEBORAH JULIAN, INTERNATIONAL PAPER
COMPANY, AGWORKS, INC., and DAN BREMER
d/b/a AGRISTAFF, INC.,                                                                     DEFENDANTS

**MEMORANDUM OPINION**

Before the Court is a Motion for Summary Judgment filed by Plaintiff United States of America, acting by and through the United States Department of Agriculture, Farm Service Agency ("FSA"). (Doc. 24). Defendants FJN Contractors, Inc., Francisco Garcia Julian, and Linda Marlene Julian Gorz responded. (Doc. 29). Plaintiff replied. (Doc. 36). The Court finds this matter ripe for consideration.[1]

BACKGROUND

Francisco Garcia Julian ("Mr. Julian") and Linda Marlene Julian Gorz[2] ("Ms. Gorz"), individually and as partners of FJN Contractors, Inc. ("FJN") (collectively "Defendants") executed and delivered to the FSA the following promissory notes in order to obtain FSA loans.

- Loan EM-43-09, March 28, 2001, principal amount $19,140.00, interest rate of 3.75%

---

[1] Since none of the remaining defendants have responded to the FSA's Motion, the Court will consider these non-responding parties consenting to the relief sought by the FSA.

[2] Mr. and Mrs. Julian have since divorced and she is now Julian Gorz.

- Loan EM-43-10, March 28, 2001, principal amount $62,480.00, interest rate of 3.75%
- Loan OL-R-44-11, June 18, 2001, principal amount $20,000.00, interest rate of 5.25%
- Loan EM-LR-43-12, February 28, 2000, principal amount $76,502.38, interest rate of 3.75%
- Loan OL-R-43-13, February 28, 2000, principal amount $128,460.73, interest rate of 5.00%

In order to secure the above loans, Mr. Julian and Ms. Gorez, individually and as partners of FJN, executed and delivered to the FSA real estate mortgages conveying certain real property, situated in Bradley County, Arkansas, and more particularly described as follows:

Tract 1: The Northwest Quarter of the Southeast Quarter of Section 35, Township 14 South, Range 11 West, excepting a strip 132 feet East and West across the East side of said forty, leaving 36.0 acres, more or less.

Tract 2: The Southwest Quarter of the Southeast Quarter of Section 35, Township 14 South, Range 11 West excepting a strip containing 8 acres described as beginning at the Southwest Corner of said forty and running North 417 feet, thence East 840 feet, thence South 417 feet thence West 840 feet to the point of beginning, leaving 32 acres, more or less.

Tract 3: Beginning at the Northeast Corner of the Southeast Quarter of the Southwest Quarter of Section 35, Township 14 South, Range 11 West, and run West 418 feet, thence South 418 feet, thence East 418 feet, thence North 418 feet to the point of beginning, containing 4 acres, more or less.

Tract 4: Beginning at the Northwest Corner of the Southeast Quarter of the Southeast Quarter of Section 35, Township 14 South, Range 11 West and run East 330 feet, thence South 1320 feet, thence West 330 feet, thence North 1320 feet to the point of beginning, containing 10 acres, more or less. LESS AND EXCEPT 4.94 ACRES IN THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER

Tract 5: Commencing at the Northwest Corner of the Northeast Quarter of the Southwest Quarter of Section 35, Township 14 South, Range 11 West and running South along the West line of said forty a distance of 330 feet to the point of beginning of tract herein conveyed, thence East parallel with the North line of said forty 718 feet, thence South parallel with the West line of said forty 330 feet, thence West parallel with the North line of said forty 718 feet to the West line of said forty, thence North along the West line of said forty, 330 feet to the point of beginning, containing 5.45 acres, more or less.

Tract 6: The Northeast Quarter of the Southeast Quarter of Section 35, Township 14 South, Range 11 West

Tract 7: The East 4 acres in the Northwest quarter of the Southeast Quarter of Section 35, Township 14 South, Range 11 West.

Mr. Julian, Ms. Gorz, individually and as partners of FJN, also executed as further security

2

for above listed loans security agreements dated: June, 18, 2001, March 28, 2001, February 28, 2000, December 15, 1998, January 30, 1998, and July 25, 1997. These security agreements were properly perfected and conveyed a priority secured lien on the following farm equipment: one John Deere model 4930 tractor, two trailers, and three hot houses.

The last payment made on loans 43-09 and 43-12 were made on April 12, 2001 and the last payment made on loan 44-13 was March 22, 2001. There have been no payments made on loans 43-10 and 43-11. It is undisputed that Mr. Julian, Ms. Gorz, and FJN are in default as to all five of these loans. Foreclosure was initiated on August 6, 2008. The amount owed to FSA by the Defendants is $207,119.77 as of September 10, 2009 with interest continuing to accrue at $18.0291 per day until judgment is entered.

## SUMMARY JUDGMENT STANDARD

The standard of review for summary judgment is well established under Rule 56(c) of the Federal Rules of Civil Procedure. A summary judgment motion should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct 2505, 91 L.Ed. 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. *Reed v. ULS Corp.,* 178 F.3d 988, 990 (8th Cir. 1999). The moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party meets this burden, the burden then shifts to the non-

moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on the issue. *Anderson*, 477 U.S. at 249. To avoid summary judgment the non-movant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit," or by "depositions, answers to interrogatories, and admissions on file," and designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

DISCUSSION

Plaintiff seeks summary judgment to be entered against Mr. Julian, Ms. Gorz, and FJN in the amount of $207,119.77 plus $18.0291, in interest, for everyday after September 10, 2009 until judgment is entered. Defendants argue that the amount sought by the FSA is incorrect, the conditions precedent to bringing a foreclosure action against an FSA borrower have not been met, and the foreclosures are barred by the applicable statute of limitations period. The Court will address each of the Defendants' arguments in turn.

I. Balance of Loans

Defendants argue that because of the misapplication of a $62,679.00 payment the balance of the loans sought by the FSA is incorrect. While the Court notes that the FSA did apply Defendants payment of $62,679.00 to loan 43-13 rather than loan 43-10 as requested by Mr. Julian, this application in no way harmed Defendants. The interest rate on loan 43-13 is 5.0% while the interest rate on loan 43-10 is 3.75%. Therefore, by applying the $62,679 to loan 43-13, Defendants actually saved approximately $4,930.00 in accrued interest. The Court recognizes that the loan payment postings, deductions, and re-postings are confusing; however, it does not find that these actions

4

adversely harmed Defendants or caused the loan amount due to be incorrect.

II. Conditions Precedent

First, Defendants argue that because there is no copy of the letter sent to him on October 3, 2001[3] in the record that FSA cannot prove it met the loan servicing requirements of 7 C.F.R. § 1951, subpart S (2001). The FSA is required to send notice by certified mail to all debtors at least 90 days in default. 7 U.S.C. section 1981(d). Section 1981(d) goes on to list the requirements of this notice and state that all notice required by this section shall be contained in the regulations implementing the chapter. 7 U.S.C. § 1981(d). In the regulations implementing this chapter, it states that "borrowers 90 days past due on payments . . . will be sent Exhibit A of this subpart with attachments 1 and 2 by certified mail, return receipt requested." 7 C.F.R. § 1951.1951.907(c) (2001).[4]

The Court finds that the record clearly reflects that the FSA sent Defendants the required notice. First, the Court notes that Defendants admit in the statute of limitations argument in their Response that they received notice in October of 2001. Additionally, on the record Exhibit A and Attachment 1 and 2 to subpart S as required by 7 C.F.R. 1951 (2001) is addressed to FJN and dated October 1, 2001 along with the certified mail receipt which Mr. Julian signed on October 3, 2001. (Doc. 36-1). Finally, on the record is an "Acknowledgment of Notice of Program Availability" dated October 22, 2001 and signed by Mr. Julian. Therefore, the Court finds that the FSA has met its burden of proving that it provided Defendants with the notice of available loan servicing programs in compliance with 7 U.S.C. section 1981(d) and 7 C.F.R. 1951 (2001). The absence in the record

---

[3] Defendants asserts the letter is dated October 3, 2001, however, October 3, 2001 is when Mr. Julian signed the certified return receipt for the document which was dated October 1, 2001.

[4] The Court notes that this section has been removed and reserved in the 2009 Code of Federal Regulations, but as these events occurred in 2001, the Court referenced the text of the 2001 Code of Federal Regulations for this opinion.

5

of an accompanying letter to this notice does not create a genuine issue of material fact as to whether Defendants received the notice.

Next, Defendants assert that the FSA admitted that the loan servicing of the loans at issue were "screwed up." This statement was typed on the "Loan Servicing Checklist." (Doc. 29-8). The statement reads in part: "Servicing of this case by FSA appears screwed up. Proper notices were provided to the borrower, but additional notices . . . were sent [and] based on the information in the case file, should not have been sent . . ." Defendants do not claim how this additional notice violated the loan servicing requirements. The FSA claims the additional notice had no effect on the servicing of Defendants loans. Therefore, the Court finds there is no genuine issue of material facts as to this issue.

Third, Defendants argue that declining Mr. Julian's offer to purchase the collateral at the appraised value was improper loan servicing. Mr. Julian claims that he offered to buyout his loans by purchasing the collateral at fair market value. Mr. Julian attempted this buyout by calling Ms. Mazzanti, the FSA loan officer, and offering to buyout the collateral if she could guarantee that the remainder of the debt would be forgiven. Ms. Mazzanti explained that she could not offer Mr. Julian that kind of assurance and that he would have to seek approval from the state director for such a buyout.[5] Mr. Julian did not continue the process of attempting a buyout. The Court finds that the record does not support that Mr. Julian actually attempted to buy the collateral at market value. He only contacted the FSA and told them he wanted to do it and then when explained the process declined to attempt it. Therefore, there is no genuine issue of material fact as to whether the FSA violated the loan servicing requirements regarding buyouts.

---

[5] Only State Executive Directors are authorized to approve buyouts. 7 C.F.R. § 1951.903 (2001).

6

Finally, while the Court is sympathetic to Defendants for the mixed signals received from the FSA, no law or regulations are cited to support a finding by this Court that mixed signals indicate improper loan servicing by the FSA. Therefore, the Court finds that, in taking the facts in a light most favorable to Defendants, there are no genuine issues of material facts as to whether the FSA met the conditions precedent to filing this action pursuant to 7 C.F.R. 1951, subpart S (2001).

### III. Statute of Limitations

Defendants argue, pursuant to 28 U.S.C. § 2415(a), that Plaintiff's foreclosure claim is barred by the applicable statute of limitations because it was not filed within six years after the right to foreclose accrued. The Court disagrees. Section 2415(a) states that "every action for money damages brought by the United States . . . which is founded upon any contract . . . shall be barred unless the complaint is filed within six years after the right of action accrues." Section 2415(a) does not apply to foreclosure actions because it is not an "action for money damages . . . founded upon a contract." *United States v. Warren Brown & Sons Farm,* 868 F. Supp. 1129, 1133 (E.D. Ark. 1994)(quoting 28 U.S.C. § 2415(a)). Instead, a foreclosure is an action *in rem*. *Id.* Therefore, section 2415(a) does not bar FSA's foreclosure action.

Next, Defendants argue that the Arkansas limitations period should apply here. Arkansas Code section 18-49-101 bars actions to foreclose a mortgage when the limitations period, six years, has expired on the underlying note. Defendants cite the Court to *U.S. v. Thornburg*, 835 F. Supp. 543 (E.D. Cal. 1993) in support of this argument. The Court is not convinced by *Thornburg*, especially in the face of *Warren*. In *Warren*, the Eastern District of Arkansas addressed this exact issue. *Warren,* 868 F. Supp. at 1134. The *Warren* court explained that it is the general rule that federal law, not state law, governs the United States' rights regarding nationally administered federal

7

programs. *Id.* (citing *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). The United States cannot be bound by a statute of limitations when Congress has not expressly provided for such. *Id.* (citing *United States v. John Hancock Mut. Life Ins. Co.,* 364 U.S. 301, 308, 81 S.Ct. 1, 5-6, 5 L.Ed.2d 1 (1960). Therefore, the FSA is not bound by Arkansas Code section 18-49-101. *Id.*

The Court finds that the FSA's foreclosure actions are not barred by either 28 U.S.C. section 2415(a) or Arkansas Code Annotated section 18-49-101. However, the Court notes that the FSA concedes that it is barred from recovering money damages on loans 43-10 and 43-11 because they matured more than six years prior to the filing of this complaint. 28 U.S.C. § 2415(a). The FSA claims that money damages on the other three loans, 43-09, 43-12, and 43-13, however, are not barred by section 2415(a).

The statute of limitation period under section 2415(a) begins running when the note reaches maturity. *Warren,* 868 F. Supp. at 1134, n. 20. However, when a borrower defaults on an unmatured note the limitations period begins to run once the lender invokes the acceleration clause in the loan agreement. *Id.* (citing *United States v. Vanornum,* 912 F.2d 1023, 1026 (8th Cir. 1990)). This case was filed on December 12, 2008. Loans 43-09, 43-12, and 43-13 are not yet mature. The FSA accelerated these loans on August 17, 2007 by sending an Acceleration Notice to Defendants. (Doc. 1-5). Defendants, however, argue that the limitations period began running on January 1, 2002. Defendants base this date on a notice letter they received in October 2001, which stated that the FSA would accelerate the loan account if Defendants did not appeal. The appeal period was 60 days. Defendants did not appeal during that period, and therefore argue that according to the notice letter the FSA accelerated the loans on January 1, 2002. The Court finds that the FSA met its burden of

proving there is no issue of material fact as to the date of acceleration with the Acceleration Notice dated August 17, 2007. (Doc. 1-5). Defendants have not created a genuine issue of material fact with their argument that the notice of default sent on October 1, 2001 served as acceleration to begin the statute of limitations period. Therefore, the Court finds that there is no genuine issues of material fact to whether this suit was filed within six years of August 17, 2007; thus the FSA's money damage claims on loans 43-09, 43-12, and 43-13 are not barred by the six-year limitation period pursuant to section 2415(a).

## CONCLUSION

For the reasons stated above, the Court finds that Plaintiff FSA's Motion for Summary Judgment should be and hereby is **GRANTED**. A judgment in the amount of $207,480.35 is entered against Defendants on the following notes: 1) 43-09; 2) 43-12; and 3) 43-13. An order of even date consistent with this Opinion shall issue.

**IT IS SO ORDERED**, this 30th day of September, 2009.

    /s/ Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge